IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § <br> § <br> RIGHT OF WAY MAINTENANCE § <br> EQUIPMENT COMPANY, § <br> § <br> DEBTOR. § <br> § | Chapter 11 <br><br> Case No. 09-35037 |

**DEBTOR'S EXPEDITED MOTION FOR USE OF CASH COLLATERAL**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 20 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING REPRESENTED**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO: THE HONORABLE KAREN K. BROWN, UNITED STATES BANKRUPTCY JUDGE:

**RIGHT OF WAY MAINTENANCE EQUIPMENT COMPANY** ("Debtor" or "ROWMEC") hereby files this Expedited Motion for Use of Cash Collateral (the "Motion"), and, in

1

support thereof, would respectfully show unto the Court the following:

**A.     JURISDICTION**

1.     This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

**B.     BACKGROUND**

2.     On or about July 13, 2009 (the "Filing Date"), ROWMEC filed its voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). ROWMEC's chapter 11 case is pending before the United States Bankruptcy Court for the Southern District of Texas, Houston Division. ROWMEC, as debtor in possession, remains in possession of its property pursuant to §§1107 and 1108 of the Bankruptcy Code. A trustee has not been appointed in this case.

3.     ROWMEC is in the business of assembling, installing, maintaining and providing certain equipment used in conjunction with the operation of tractors.

4.     On August 5, 2009, ROWMEC filed an adversary proceeding, Adversary No. 09-03303 (the "Adversary Proceeding"), against its former legal counsel, Bandas Law Firm, P.C., Christopher A. Bandas, Robert C. Curfiss, Jackson Walker, LLP., Moulton & Meyer, LLP, Jeffrey D. Meyer, Patricia A. Shackelford, P.C., and Patricia A. Shackelford (collectively the "Attorneys"), against Cambridge Management Group, LLC ("Cambridge") and against Gyro-Trac, Inc. and Gyro-Trac (USA), Inc. (collectively "Gyro-Trac"). ROWMEC incorporates herein by reference the Statement of Facts in the Complaint filed in the Adversary Proceeding, pages 5-17.[1]

**C.     THE SECURITY INTERESTS OF CAMBRIDGE**

5.     On October 18, 2007, but dated September 28, 2007, ROWMEC entered into an "Agreement Assigning Interest in Settlement, Security Agreement With Limited Irrevocable Power

---

[1] Initially capped words defined in the Statement of Facts are sometimes used herein.

of Attorney" with Defendant Cambridge ("Cambridge Agreement"). A true and correct copy of the Cambridge Agreement is attached hereto and incorporated herein by reference as **Exhibit "1"**. In the Cambridge Agreement,

    a. The following consideration flowed from Cambridge to ROWMEC: Cambridge agreed to transfer to or for the benefit of ROWMEC $785,525 on the Funding Date. Actually, two wire transfers were effected transferring to ROWMEC $695,000 on October 25, 2007. The wire transfers came from a New York bank, JPMorgan Chase Bank, N.A. The balance of the $785,525, $90,525, was allegedly paid to an undisclosed broker - $85,000;[2] for various unspecified review fees - $525.00; and Cambridge's attorney fees - $5,000.

    b. In exchange, the following consideration flowed from ROWMEC to Cambridge:

        i. ROWMEC agreed to pay Cambridge a Guaranteed Return on Investment ("ROI") of $1,052,077.24 on or before 180 days from the Funding Date plus a penalty accruing at the rate of 4.99% per each successive 30 day period thereafter times the difference between $1,052,077.24 and the principal amount actually received by Cambridge through the first day of each such successive thirty (30) day period thereafter, compounded as of the last day of each such successive 30 day period thereafter, until the $1,052,077.24 plus all penalty amounts have been paid in full.

        ii. ROWMEC assigned and sold an interest in the Recovery in the Gyro-Trac Law Suit to Cambridge.

        iii. ROWMEC provided further security in the form of real estate mortgages on two tracts of land upon which it operated its business, estimated at the time to have a net value of $539,589. Cambridge recorded a Deed of Trust and Security Agreement in the Montgomery County Real Property Records on January 13, 2009, covering said real estate.

        iv. ROWMEC provided further security in the form of a security interest in the Inventory and Equipment owned by ROWMEC (BUT NOT ACCOUNTS RECEIVABLE), estimated at the time to be in the approximate amount of $600,000. Cambridge recorded a UCC 1 Financing Statement with the Secretary of State of the State of Texas, on November 6, 2007, that covered only inventory and equipment, , a true and correct copy of which is attached hereto as **Exhibit "2"** and incorporated herein by reference for all purposes. Said financing statement did not cover accounts receivable nor did it cover proceeds.

---

[2] ROWMEC believes that the broker paid by Cambridge was David Solomon. Solomon claims he only received $75,000.00.

6.      In summary, ROWMEC received $695,000 and in return gave Cambridge a promise to pay Cambridge $1,052,077.24 in 180 days that was fully secured by liens on ROWMEC's real estate, equipment and inventory and an assignment of an interest in the recovery in the Gyro-Trac Law Suit.  The profit contracted for by Cambridge, $357,077.24, just for the first 180 days bore an effective annual interest rate of 102.8%.  As of the date of the payment of the $1,403,814.60 to Cambridge on February 18, 2009, the effective annual interest rate was approximately 153%.  Stated another way, ROWMEC received from Cambridge what Cambridge referred to as an "investment" of $695.000.00 on October 25, 2007, that was fully secured by ROWMEC's business assets and real estate, and 482 days later, ROWMEC returned to Cambridge its $695,000 plus a profit of $708,814.60 for what appears to have been a fully secured, virtually risk free investment.  On top of the $1,403,814.60 paid on February 18, 2009, the Cambridge Agreement provides for further penalties due as of the Filing Date in the amount of $390,112.56.

**D.     THE SECURITY INTERESTS OF CAMBRIDGE
        HAVE BEEN TRANSFERRED TO BANDAS**

7.      On June 9, 2009, Cambridge executed an Assignment of Contract Rights, a true and correct copy of which is attached hereto as **Exhibit "3"** and incorporated herein by reference for all purposes (the "Assignment of Contract Rights".  By such Assignment of Contract Rights, Cambridge assigned absolutely and unconditionally without further contingencies[3] the following (defined in said assignment as "Contract Rights"):

> "(a)    That certain Cambridge Agreement in Settlement, Security Agreement with Limited Irrevocable Power of Attorney dated September 28, 2007 by and among Assignor, Right of Way Maintenance Equipment Company. Inc. ("ROWMEC") and the Assignee, a true and correct copy of which is attached hereto as Exhibit "A"; and
>
> (b)    All rights in and to the final judgment rendered in Civil Action No. H-05-4081; United States District Court Southern District of Texas styled *Right of Way Maintenance Company D/B/A ROWMEC as Plaintiff and Gyro-Trac, Inc.*

---

[3] See paragraph (g) on page 3 of the Assignment of Contract Rights.

*and Gyro-Trac (U.S.A.). Inc. as Defendants* dated June 12. 2007, a true and correct copy of which is attached hereto as Exhibit "B".

(c) All rights in and to that Limited Irrevocable Power of Attorney dated September 28, 2007 by and between ROWMEC, as Grantor and the Assignor, a true and correct copy of which is attached hereto as Exhibit "C".

(d) That certain Deed of Trust executed October 19, 2007. executed by ROWMBC to Michael R. Perle. Trustee, for the benefit of Assignor, filed for record ou January 16, 2009 under County Clerk's File No. 2009·004080, et seq. in the Official Public Records of Real Property of Montgomery County. Texas, a true and correct copy of which is attached hereto as Exhibit" D".

(e) All rights in and to that certain Notice of Assignment, Irrevocable Direction of Payment and Authorization executed by ROWMEC dated September 28, 2007 to the Bandas Law Firm, P.C., a true and correct copy of which is attached hereto as Exhibit "E".

(f) All rights in and to that certain UCC-l naming ROWMEC. as Debtor, and the Assignor, as secured Party, recorded in the office of the Secretary of State of Texas on November 6. 2007 under File No. 07-0037923849 and in the Official Public Records of Real Property of Montgomery County, Texas under File No. 2007-128225, a true and correct copy of which is attached hereto as Exhibit "F"."

8. The consideration Cambridge received from Bandas is set forth in a letter agreement between Cambridge and Bandas on the same date as the Assignment of Contract Rights, a true and correct copy of which is attached hereto as **Exhibit "4"** and incorporated herein by reference for all purposes (the "Bandas-Cambridge Letter Agreement"), and a supplement thereto (the "Supplemental Bandas-Cambridge Letter Agreement"), a true and correct copy of which is attached hereto as **Exhibit "5"** and incorporated herein by reference for all purposes.

9. One thing is absolutely clear: Cambridge no longer has any rights to the Contract Rights transferred to Bandas, and, therefore, has no interest in cash collateral.

E. **THE INTERESTS OF BANDAS**

10. On or about November 1, 2005, Bandas and ROWMEC entered into a Contract of Employment (the "Bandas Fee Agreement"), a true and correct copy of which is attached hereto

5

and incorporated herein by reference as **Exhibit "6"**.  In the Bandas Fee Agreement, ROWMEC granted Bandas a contingent fee for prosecuting the Gyro-Trac Law Suit described as follows:

> "In consideration of such services the attorneys' fees shall he a sum equal to thirty-three and one-third percent (33 1/3%). These percentages will be calculated on the total/gross amount of monies, interest, or property recovered (the "Recovery"). However, some of the causes (If action that c1ient (s) may have against defendant(s) may support of the award of attorneys fees in addition to damages. If such attorneys' fees are awarded or paid by defendant(s), then such award shall not be included in calculating the Recovery and such award of attorneys' fees shall be paid to attorneys in addition to the attorneys' fees payable under the applicable percentage specified above. If the case is appealed after judgment, the undersigned client(s) agree to pay as additional attorneys' fees an additional five percent (5%) of the Recovery as consideration for each appeal, whether appealed by the Client or any defendant. The intent of the parties is that there would be an additional five (5%) payment for each appeal until all appeals are concluded in addition to the underlying contingent fee.  If no recovery is obtained, no fee shall be payable to attorneys."

*See* Bandas Fee Agreement, 3rd ¶ at p 1.  Notably, ROWMEC did not grant Bandas a contingency fee calculated on non-cash awards (referred to as a "reverse contingency".[4]

11.     The Bandas Fee Agreement contained the following assignment language:

> "Each of the undersigned client(g), in consideration for the attomeys' services, hereby sells, conveys, grants and assigns to the attorneys an interest to the extent herein indicated (i.e.., attorneys' fees, expense costs, disbursements, etc.) in each client(s)' claims, causes of action, settlement, judgment, monies, interest, or property recovered or recovery of whatever nature, type, or means."

12.     However, the Bandas Fee Agreement also contained the following "lien language":

> "THE CLIENT(S) HEREBY GRANT(S) THE ATTORNEYS A LIEN ON THE CLAIMS AND CAUSES OF ACTION COVERED BY AND REFERENCED IN THIS AGREEMENT, and a lien on any proceeds and all Judgments recovered in connection with this claim(s) or cause(s) of action as security for the payment of

---

[4] A reverse contingency is where, for example, the Client was, as a result of the judgment or settlement, entitled to keep product that was claimed by the defendant in the lawsuit.  Such contingency fees are enforceable only where the attorney specifies expressly in the contract with the client that the contingent fee will be calculated on non-cash benefits as well as money damages.  Here the Bandas Fee Agreement does not refer to non-cash benefits. *Levine v. Bayne Snell & Krause, Ltd.,* 40 S.W.3d 92 (Tex. 2001).

the attorneys fees, expenses, disbursements, or costs referenced herein."

*See* Bandas Fee Agreement, 3rd ¶ at p 1. Bandas has never filed a Uniform Commercial Code Financing Statement.

13. On or about September 25, 2007, after a Final Judgment was entered against Gyro-Trac for $3,600,000, Bandas and ROWMEC entered into a Supplemental (sic) to Bandas Fee Agreement (the "Supplemental Bandas Fee Agreement"), a true and correct copy of which is attached hereto and incorporated herein by reference as **Exhibit "7"**. The Supplemental Bandas Fee Agreement materially improved the financial position of Bandas in the following respects:

    a. The contingent fee was raised from 33% to 45%;

    b. Bandas' obligation to pay 1/3rd of the expenses out of his portion of the recovery became an obligation payable out of ROWMEC's portion of the recovery;

    c. In the event the recovery was insufficient to allow ROWMEC to reimburse Bandas for the full amount of the expenses paid by Bandas, ROWMEC would remain obligated to reimburse Bandas for such expenses. In the original Bandas Fee Agreement, ROWMEC was not liable for such expenses.

14. In the Adversary Proceeding, ROWMEC has sought to set aside the Supplemental Bandas Fee Agreement on the basis that there was no or inadequate consideration flowing to ROWMEC thereunder, and on the basis that it was fraudulently induced.

**F. THE FUNDS IN THE REGISTRY OF THE STATE COURT**

15. On or about April 16, 2008, Gyro-Trac caused the Bank of Montreal to open a $3,600,000.00 letter of credit in favor of ROWMEC in order to supersede the Final Judgment while on appeal.

16. On December 18, 2008, the Fifth Circuit Court of Appeals issued an opinion affirming in all respects the Final Judgment.

17. After a dispute over Bandas' fees arose, on January 8, 2009, Bandas instituted a

lawsuit in the 113th Judicial District Court, Harris County, Texas, Cause No. 2009-01433, seeking a declaratory judgment and interpleader of the $3,600,000 letter of credit (the "State Court Case"). On or about January 16, 2009, the $3,600,000 letter of credit was deposited into the registry of court in the State Court Case.

18.     On or about February 2, 2009, the court entered an order permitting the parties to withdraw the $3,600,000 letter of credit for purpose of presentment. The February 2, 2009, order directed Bandas to receive the proceeds from the $3,600,000 letter of credit, deliver to Cambridge the portion of the recovery due to it under the Assignment and Security Agreement, and then deposit the remaining funds into the registry of the 113th Judicial District Court.

19.     On February 18, 2009, Bandas deposited $2,196,185.40 into the registry of the 113th Judicial District Court. On information and belief, Plaintiff believes that the balance of the $3,600,000.00, $1,403,814.60, was wire transferred from Bandas to Cambridge on or about February 18, 2009.

20.     On the same date, ROWMEC filed a counterclaim and third-party claims against Bandas, Meyer and Shackelford alleging deceptive trade practice violations, negligent misrepresentation, common law fraud, negligence, breach of fiduciary duty, and breach of duty of good faith and fair dealing.

21.     On March 13, 2009, the court in the State Court Case entered an Order Granting Plaintiff Bandas Law Firm, PC's Motion for Partial Summary Judgment ("Partial Summary Judgment Order"), a true and correct copy of which is attached hereto and incorporated herein by reference as **Exhibit "8"**. In the Partial Summary judgment Order, the Court recited that proper notice of the motion had been given to ROWMEC, but that ROMEC did not file a response to the motion. Inexplicably, ROWMEC's then attorneys, Christopher R. Johnston and Robert J.

Lowe, Jr., did not respond to the motion for partial summary judgment, and did not appear at the hearing on the motion. As a consequence, the court in the State Court Case ordered the release to Bandas from the registry of the court of $1,620,000, representing 45% of $3,600,000,00, leaving a balance in the court registry of $576,185.40. Said funds plus interest remain in the State Court Registry.

22. On April 8, 2009, ROWMEC engaged Mark W. Long to file a Motion for Reconsideration of the partial summary judgment entered by the court. No order appears on the docket granting or denying such motion as of the date of the filing of this pleading. At best, the Partial Summary Judgment Order is interlocutory.

### G. THE FUNDS IN THE REGISTRY OF THE STATE COURT ARE PROPERTY OF THE ROWMEC BANKRUPTCY ESTATE

23. It is beyond argument that the funds in the state court registry are property of the ROWMEC bankruptcy estate. *See In re Equator Corp*, 362 B.R. 326 (Bankr. S.D. Tex. 2007), *affirmed Norman v Havis*, 261 Fed.Appx. 795, 2008 WL 152564 (5th Cir. 2008)

### H. BANDAS' CLAIM FOR A CONTINGENCY ON PRODUCT RETAINED BY ROWMEC IS, AS A MATTER OF LAW, UNENFORCEABLE UNDER TEXAS LAW

24. Bandas claims that he is entitled to $323,000.00 in the Registry of the State Court to satisfy his 45% contingent fee on the $718,000 in product he alleges that ROWMEC was able to retain as a result of the Gyro-Trac Litigation. However, Bandas, who drafted the Bandas Fee Agreement, did not provide for recovery of a contingent fee on non-cash recoveries. As a matter of Texas law, Bandas is not entitled to such a recovery. *Levine v. Bayne Snell & Krause, Ltd.*, 40 S.W.3d 92 (Tex. 2001). The Texas Supreme Court held in *Levine* reasoned,

> "Because the lawyer is better able than the client to predict and provide for fee arrangements based on recoveries diverging from the traditional payment actually received, the burden should fall on the lawyer to express in a contract with the

9

client whether the contingent fee will be calculated on non-cash benefits as well as money damages."

*Id.* at 95. Then the Supreme Court held:

"Because in this case the contingent fee contract did not provide otherwise, "any amount received" refers only to the net amount of the client's recovery. We, therefore, conclude that no further fee is due from the Levines to their attorneys. Accordingly, we reverse the judgment of the court of appeals and render judgment for the Levines."

*Id.*, 40 S.W.3rd at 96. In the Bandas Fee Agreement, the "Recovery" upon which the contingent fee is calculated is described as "the total/gross amount of monies, interest, or property recovered." There is no reference to the fact that the contingent fee will be calculated on non-cash benefits as well as money damages.

## I.  BANDAS' CLAIM FOR EXPENSES IS UNSECURED AND DISPUTED

25. Bandas claims that he is entitled to recover out of the State Court Registry expenses he and his co-counsel, Moulton & Meyers have incurred in the prosecution of the Gyro-Trac Lawsuit. He claims that he is entitled to $218,543.64, plus interest in the amount of 34,641.87 for a total of $253,185.51. This amount is disputed by ROWMEC and is the subject of a request for an accounting in the Adversary Proceeding. ROWMEC has also asserted causes of action in the Adversary Proceeding seeking to set aside the Bandas Fee Agreement, as supplemented.

26. However, assuming that the Court determines that some amount of expenses is due under the Bandas Fee Agreement, such amount would be an unsecured claim against the ROWMEC bankruptcy estate. While Bandas is granted a lien to secure such expenses under the Bandas Fee Agreement, no UCC-1 Financing Statement was ever filed, and, therefore, such claim would be unsecured. Under Section 9 of the Texas Business and Commerce Code, a right to payment under a contingency fee agreement is a contract right and falls under the broad category of "general intangible." TEX. Bus. & COM. CODE ANN. § 9.102(a)(42); *See In re Newman*, 993 F.2d 90, 93 (5th Cir. 1993). Perfection of a security interest in a general intangible

is accomplished by filing a financing statement. *See* § 9.310; *See also Centex Constr. Co.* v. *Kennedy,* 332 F.Supp. 1213, 1215 (S.D. Tex. 1971) (finding that a security interest in contract rights is properly perfected by the filing of a financing statement).  Bandas has not filed a financing statement.

**J.    CAMBRIDGE HAS ASSIGNED ITS SECURITY INTEREST IN EQUIPMENT AND INVENTORY TO BANDAS**

27.    As stated above, Cambridge has assigned absolutely and unconditionally without further contingencies any rights it had to its security interest in ROWMEC's equipment and inventory.

**K.    ROWMEC DISPUTES THAT THAT IT OWES ANYTHING UNDER THE CAMBRIDGE AGREEMENT**

28.    In the Adversary Proceeding, ROWMEC has asserted that the Cambridge transaction is voidable under 11 U.S.C. §§ 548 and 550, because ROWMEC did not receive reasonably equivalent value in exchange for the obligations it incurred to Cambridge under the Cambridge Agreement.  ROWMEC has sought to recover the difference between the $1,403,814.60, which was paid to Cambridge on or about February 18, 2009, and the $695,000 paid to ROWMEC on October 25, 2007, plus interest at 6%.  ROWMEC has also sought to set aside:

a.    Any interest Cambridge or Bandas may have in the Cambridge Agreement;

b.    All rights of Cambridge or Bandas in and to the Final Judgment;

c.    All rights in and to that Limited Irrevocable Power of Attorney dated September 28, 2007, between Cambridge and ROWMEC;

d.    That certain deed of trust ROWMEC granted in favor of Cambridge executed on October 19, 2007, filed for record on January 16, 2009, in the Montgomery County, Texas, Real Property Records, under Clerk's File No. 2009-004080, covering the two tracts of land owned by ROWMEC;

11

  e.  All rights in and to that certain Notice of Assignment, Irrevocable Direction of Payment and Authorization executed by ROWMEC dated September 28, 2007 to Bandas; and

  f.  **the security interest granted by ROWMEC in favor of Cambridge on ROWMEC's inventory and equipment perfected by a UCC Financing Statement filed on November 6, 2007, with the Texas Secretary of State.**

**L. THE TOTAL AMOUNT POSSIBLY DUE UNDER THE CAMBRIDGE AGREEMENT AS OF THE FILING DATE IS $390,112.56**

  29.  Even if the Court ultimately determines that the Cambridge Agreement is valid, binding and enforceable, the total amount possibly due under the Cambridge Agreement is $390,112.56 as of the Filling Date, regardless of whether Cambridge or Bandas owns the rights under the Cambridge Agreement.

**M. THERE IS STILL $335,361.56 TO COLLECT FROM GYRO-TRAC UNDER THE FINAL JUDGMENT**

  30.  On or about February 18, 2009, the $3,600,000 letter of credit was drawn down, and the Final Judgment was paid to that extent. At the time the amount due under the Final Judgment was $3,928,311.77. As of August 4, 2009, the balance due under the Final Judgment was $335,361.56

  31.  ROWMEC is in the process of attempting to recover balance due under the Final Judgment.

**N.  CONCLUSION AND PRAYER**

  32.  ROWMEC respectfully requests that the Court direct ROWMEC, Bandas and Cambridge to file a joint motion for an order in the State Court Litigation within three business days of the entry of the order of this Court permitting withdrawal of the funds in the State Court Registry.

  33.  ROWMEC respectfully requests that the $390,112.56 due under the Cambridge Agreement be deposited into the registry of this Court. If the Court ultimately determines that the lien of Cambridge/Bandas is valid, binding and enforceable, such lien is more than protected

by such funds.

34. ROWMEC requests that the balance of the funds removed from the State Court Registry be turned over to ROWMEC for its use in the ordinary course of its business.

35. ROWMEC requests that it be given the right to use and sell its inventory and equipment in the ordinary course of its business in that the Cambridge lien is adequately protected by the $390,112.56 deposited into the registry of this Court.

36. ROWMEC requests such other and further relief as is just.

Respectfully submitted this 23rd day of August 2009.

/s/ Leonard H. Simon
Leonard H. Simon, Esq.
TBN: 18387400; SDOT: 8200
The Riviana Building
2777 Allen Parkway, Suite 800
Houston, Texas 77019
(713) 737-8207 (Direct)
(832) 202-2810 (Direct Fax)
lsimon@pendergraftsimon.com
COUNSEL FOR DEBTOR

OF COUNSEL:

PENDERGRAFT & SIMON
The Riviana Building
2777 Allen Parkway, Suite 800
Houston, Texas 77019
(713) 528-8555 (Main)
(713) 868-1267 (Main Fax)

CERTIFICATE OF SERVICE

       This is to certify that a true and correct copy of the above and foregoing has been served by electronic transmission to all registered ECF users appearing in the case on this 23rd day of August 2009.  Additionally, this motion with exhibits was emailed to counsel for Cambridge, Alex Chae of the Gardere firm, and counsel for Bandas, Michael S. Hays, Hays of the McConn, Rice & Pickering firm on the 23rd day of August 2009, and served on Chae and Hays by messenger on August 24, 2009.  A copy of this motion, without exhibits was served on the parties listed on the attached matrix by regular mail on the 24th day of August 2009.

       */s/ Leonard H. Simon*
       Leonard H. Simon