**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **RIGHT OF WAY MAINTENANCE** | § | **CASE NO.  09-35037-H5-11** |
| **AND EQUIPMENT CO.,** | § | |
| | § | |
| **DEBTOR** | § | **Chapter 11** |

**OBJECTION TO MOTION TO USE CASH COLLATERAL**
(Responds to Docket #20)

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The Bandas/Meyer parties[1], hereby object to the Debtor's *Expedited Motion for Use of Cash Collateral* ("Motion" Docket #20).  The grounds for this motion are as follows:

**SUMMARY**

1.      This is an attempt to bypass the State Court[2] who is ready to issue a summary judgment against the Debtor.  Bandas and his co-counsel obtained a $3.6 Million judgment *in favor* of the Debtor, who sued Bandas for malpractice.  The Debtor, under the engagement agreements, granted a lien and also "sells, conveys, grants and assigns" 45%[3] of the recovery as a fee and such additional amount as needed for expenses.  The Debtor factored its share of the recovery to Cambridge[4].  The money recovered on the judgment was interplead into the registry of the State Court and all but $576,185.40 has already been disbursed by court order.

2.      In the interpleader/malpractice action in State Court, the Debtor had already lost several motions for summary judgment.  The Debtor had failed to produce an expert, had provided virtually no documents, and had taken no depositions.   After a "no evidence" summary

---

[1] Chris Bandas, the Bandas Law firm, Jeff Meyer and Moulton & Meyer often referred to for simplicity as "Bandas"..
[2] Texas State District Court for the 133rd Judicial District.
[3] Originally 35% and the client paid a share of expenses.  When the client proved unable to pay their share of expenses, the fee was modified to 45%, but Bandas paid all expenses.
[4] Cambridge Management Group,. LLC.

{NON999\07014\0556692.DOC;1\HMR}                    - 1 -

judgment was filed by Bandas, the Debtor filed Chapter 11.  The Debtor then re-filed the same claims as an adversary proceeding.  The Debtor also filed the pending Motion.

3.      The Motion seeks an order that Chris Bandas[5] and Cambridge are "directed to file a joint motion for an order in the State Court Litigation within three business days of the entry of this order requesting withdrawal of the funds in the State Court Registry."[6]    That relief is improper in the context of a lift stay motion. Fed. R. Bankr. P. 7001.

4.      The funds remaining in the State Court's registry are *custodia legis* – not the Debtor's cash, deposit accounts or even property that could be attached by a hypothetical lien creditor.  The Debtor cannot control the money or use it.  The Debtor makes bare legal claim to the funds. The funds are not "cash collateral" defined by 11 U.S.C. §363(a).  The State Court should determine the competing claims to title.

5.      The motion is being heard on less than 15 days notice.  The Debtor has made no showing of irreparable harm as required by Fed. R. Bakr. P. 4001.  The Debtor has no operations and no inventory and no budgeted use of the funds.  The Court should abstain from the Chapter 11 proceeding.

## BACKGROUND

6.      The Debtor has filed schedules indicating that it has no inventory or other significant assets.  The Debtor's only significant asset is the alleged malpractice claim against Bandas, Meyer and Shackelford – prior counsel who won a stunning $3.6 Million verdict *in favor* of the Debtor.  These counsel worked on contingency and funded expenses from their own pockets.

---

[5] It does not specifically direct the other counsel, Shackelford and Meyer, but presumably was intended to so order.
[6] Docket 20-9, page 1.

7.      The defendant (Gyro-Trac) appealed the initial judgment.  Gyro-Trac posted a $3.6 Million letter of credit as surety for the appeal.  During the appeal, the Debtor borrowed significant funds from Cambridge – who took a lien on substantially all of the Debtor's assets. After the appeal was won, on January 7, 2009, the Debtor claimed Bandas, Meyer and Shackelford had committed malpractice.

8.      The $3.6 Million letter of credit was interplead into Judge Patricia Hancock's registry in the State Court.   The Debtor also sued Bandas, Meyer and Shackelford for malpractice.

9.      By Agreed Order, Bandas presented the letter of credit to the issuing bank.  The $3.6 Million was funded by the Bank of Montreal into Bandas' trust account under the Court's Order.  From there, again under court order, Cambridge was paid $1,403,814.60 in partial satisfaction of its indebtedness.  The remaining funds were re-deposited into the Court's registry – all by court order and under court supervision.

10.      The Debtor's engagement agreement with Bandas, Meyer and Shackelford "sells, conveys, grants and assigns" all of the Debtor's right, title and interest to a recovery to the attorney to pay fees and expenses and pass-though interest on the same

    Each of the undersigned client(s), in consideration for the attorneys' services, hereby sells, conveys, grants and assigns to the attorneys an interest to the extent herein indicated (*i.e.*, attorneys' fees, expense costs, disbursements, etc.) in each client(s)' claims, causes of action, settlement, judgment, monies, interest, or property recovered or recovery of whatever nature, type, or means.

    Clients(s) hereby authorize attorneys to pay all expenses, costs, liens or medical bills, including interest, from the amount of any recovery or settlement portion due client before remitting clients' portion to said clients.

11.      Bandas, Meyer and Shackelford also filed a notice of transfer in the underlying litigation[7] under Tex. Prop. Code. §12.014.  The Texas Property Code section reads:

12.014.  **Transfer of Judgment or Cause of Action**

---

[7] Case NO. Docket #235

(a) A judgment or part of a judgment of a court of record or an interest in a cause of action on which suit has been filed may be sold, regardless of whether the judgment or cause of action is assignable in law or equity, if the transfer is in writing.

(b) A transfer under this section may be filed with the papers of the suit if the transfer is acknowledged or sworn to in the form and manner required by law for acknowledgement or swearing of deeds.

(c) If a transfer of a judgment is filed, the clerk shall record the transfer appropriately. If a transfer of a cause of action in which a judgment has not been rendered is filed, the clerk shall note and briefly state the substance of the transfer on the court docket at the place where the suit is entered.

(d) **A transfer filed under this section is notice to and is binding on a person subsequently dealing with the judgment or cause of action.**

Tex. Prop. Code §12.014 (emphasis added).

12.    Indeed, by Rule 11 Agreement, the Debtor conceded that Bandas held "a property interest in the proceeds", and only disputed the amount and extent of the claim:

> Pursuant to Rule 11 of the Texas Rules of Civil Procedure, the below parties or counsel executing this Rule 11 Agreement do hereby agree as follows:
>
> 1.    The following original letter of credit and original amendment thereto are in the possession of the Court (hereinafter "Original LOC"):
>
> Standby Letter of Credit
> Issued by the Bank of Montreal, Toronto, Canada
> Letter of Credit No. BMT 02040710S
> Whitney Bank's reference No. AS53674
>
> 2.    Right of Way Maintenance Equipment, Inc. is the named beneficiary of the Original LOC;
>
> 3.    Pursuant to TEX. BUS. & COM. CODE §5.114, Bandas Law Firm, P.C., Moulton & Meyer, L.L.P., Shackelford Law Firm, and Cambridge Management Group, LLC are assignees of a portion of Right of Way Maintenance Equipment, Inc.'s rights to payment under the Original LOC;
>
> 4.    Pursuant to TEX. PROP. CODE §1.014, Bandas Law Firm, P.C., Moulton & Meyer, L.L.P., Shackelford Law Firm, and Cambridge Management Group, LLC have a property interest in proceeds from the Original LOC.
>
> 5.    Right of Way Maintenance Equipment, Inc. disputes the extent and amount of the lien and property interest in the proceeds from the Original LOC by the Bandas Law Firm, P.C., Moulton & Meyer, L.L.P., and Shackelford Law Firm.

Rule 11 Agreement filed 1/13/2009.

13.     Based on the evidence presented to her, Judge Hancock granted partial summary judgment against the Debtor and released $1,620,000 to Bandas for payment of his contingency fee – but not full payment of expenses.[8]   Bandas is still claiming over $200,000 from the judgment for unpaid expenses.

14.     The funds remaining in the registry of Judge Hancock's court is now the subject of the present motion for authorization for use of cash collateral.  Also, the transfers to Bandas ($1.6 Million) and to Cambridge ($1.4 Million) are the subject of an adversary proceeding brought alleging malpractice, usury, and preferential transfers, among other things.

15.     The Debtor's present Motion attaches a proposed order reads, in relevant part, as follows:

> ORDERED that ROWMEC, Bandas and Cambridge **are directed to file a joint motion for an order in the State Court Litigation within three business days** of the entry of this order requesting withdrawal of the funds in the State Court Registry.

Docket 20-9, page 1 (emphasis added).

16.     Bandas and Cambridge claim entitlement to the funds in the state court to satisfy unpaid amounts.  Bandas, Meyer and Shackelford specifically rely on the conveyance of title, their lien, and the Texas Property Code as evidence of their entitlement.

17.     The Debtor's schedules list no inventory.[9]  The Debtor's only substantial asset is this litigation and a parcel of encumbered real estate.[10]  The Debtor's substantial creditors are the

---

[8] See Docket #20-8, Exhibit 8 to the Motion.
[9] Docket #3 Schedule B (page 10, item 30) checked "none".  Note that the statement of financial affairs lists former inventories in excess of $500,000.
[10] See Docket #3.

three owners with "cash loans".[11]   Otherwise, the Debtor is a shell apparently without current assets or business or payroll.

## THE MOTION SEEKS IMPROPER RELIEF

18.     It is improper for the Debtor to demand that, in the context of the present Motion, the Court order Bandas and Cambridge to file a motion to release funds in the registry of the state court.  The present motion is a motion to use cash collateral – not a declaratory judgment action and not a complaint for a injunctive relief.  Cash collateral must be something in which the Debtor has an interest.   Here, the Debtor has no right to the funds.   They were sold, conveyed, and assigned to the lawyers for their fees and expenses.  The Debtor's share of the recovery was factored to Cambridge.

19.     The Debtor is not without an avenue for redress.   The state court proceeding offers the Debtor ample opportunity to argue malpractice, usury and the entitlement of Bandas and Cambridge to the remaining funds under Texas Law.   In any case, the Debtor is already seeking declaratory and injunctive relief against the funds in the registry of the Texas Court.

20.     Federal Rule of Bankruptcy Procedure 7001 requires that declaratory and injunctive relief be granted only by an adversary proceeding:

> The following are adversary proceedings:
>   (1) a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under § 554(b) or § 725 of the Code, Rule 2017, or Rule 6002;
>   (2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d);
> * * *
>  (7) a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief;
>   (8) a proceeding to subordinate any allowed claim or interest, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination;
>   (9) a proceeding to obtain a declaratory judgment relating to any of the

---

[11] Docket #3, Schedule F,  page 17, 19 and 20 – John O' Hagan, $141,800.80, Scott O'Hagan $79,927.64, William O'Hagan $140,316.14.

{NON999\07014\0556692.DOC;1\HMR}

foregoing; or

   (10) a proceeding to determine a claim or cause of action removed under 28 U.S.C. § 1452.

Fed. R. Bankr. P. 7001.

21.    Moreover, a cash collateral motion would not allow Bandas or Cambridge to obtain their money – that requires an adversary proceeding.  *In re Realty Southwest Assoc*. 140 B.R. 360 (Bankr. S.D.N.Y. 1992) (Creditor seeking return of cash collateral must file adversary complaint under Bankruptcy Rule 7001).

22.    After a thorough search, counsel found no reported case permitting a cash collateral motion to compel a state court to disburse funds held in its registry.

23.    Here, these are interplead funds that the Debtor claims an interest in, not the Debtor's funds held by prejudgment attachment.  Funds held by prejudgment attachment are clearly the debtor's property, but seized.  Funds interplead with a title dispute are *custodia legis*, pending a determination of title the Debtor has no rights whatsoever.

24.    The Debtor has asked for extraordinary injunctive relief against Bandas and Cambridge to require them to file a *motion* to disburse the funds.  Yet, the funds are not the property of the estate.

**THE FUNDS ARE CUSTODIA LEGIS**

25.    The money held in the State Court is not the property of the Debtor or of the estate.  It is *custodia legis*.

**The Interplead Funds Property of the Estate**

26.    When funds are interplead into the court and a debtor subsequently files bankruptcy, courts have found that the inteplead funds are not "property of the estate" because they are *custodia legis*.  See, e.g. *Shron v. M & G Promo Servs. (In re Anthony Sicari, Inc.)*, 151

B.R. 60, 61 (S.D.N.Y. 1993) (deposit effected an alienation of those funds so that they were not part of the debtor's bankruptcy estate); see also *Mid-Jersey Nat'l Bank v. Fidelity-Mortgage Investors*, 518 F.2d 640 (3d Cir. 1975) (pre-code); *In re Casco Chem. Co.*, 335 F.2d 645 (5th Cir. 1964); *Saper v. West*, 263 F.2d 422 (2nd Cir. 1959) (pre code); and *In re Celotex Corp.*, 128 B.R. 478 (Bankr. M.D. Fla. 1991).

27.     *Casco Chem. Co.*, although a pre-code case, is useful because of its factual similarity to this case.  In that case, the competing creditors of the debtor reached an agreement on the disbursement of interplead funds on the day before the debtor's involuntary bankruptcy was filed.  The bankruptcy trustee claimed an interest in the funds which, unlike these funds, were nominally the debtor's.  The Fifth Circuit held that contested funds interplead into the court registry were not property of the debtor's estate.  *Casco*, 335 F.2d at 646-49.

28.     The reason for this rule is that, when a debtor interpleads an asset in the registry of a state court, it ceases to have the essential character of "property" because the Debtor cannot control the use of the funds:

> When the asset at issue is funds in an account, it is necessary to determine the terms under which the funds are held.  If the debtor's use of the funds is so restricted that the debtor cannot control their use, the account may not be property of the estate.  It has been held that funds may stand in a bank account in the name of the debtor, carry the debtor's tax identification number, and still not be property of the estate.

*Branch v. Hill, Holliday, Connors, Cosmopoulos, Advertising (In re Bank of New Eng.)*, 165 B.R. 972 (Bankr. D. Mass. 1994) (referencing *In re Comprop Investment Properties, Ltd.*, 81 B.R. 101, 102 (Bankr. M.D. Fla. 1987)).

29.     Here, we have funds interplead and already (mostly) disbursed along with a determination of title.  It would also be inappropriate to assume the funds are "property of the estate" under 11 U.S.C. §541 because, on the petition date, the Debtor had no control over the funds and no right to direct the use of the funds.  Indeed, absent an order of the State Court that

the Debtor has title, the Debtor's interest is a naked legal claim and the Debtor has no rights whatsoever.

**Debtor Does not Have Strong Arm Powers to Avoid the Interpleader**

30.     The Debtor cannot use or control the property and cannot indirectly obtain the property using the strong-arm powers of 11 U.S.C. §544 or as a preference under 11 U.S.C. §547.

31.     Judge McGuire discussed the issue how an insurance recovery interplead into the registry of a state court and whether there is a preferential transfer when funds were disbursed:

> Prejudgment, the Debtor never had possession or control of the insurance proceeds interpled into the registry. All property that is placed into the registry of the Court is regarded as in *custodia legis*, and, as such, is not subject to levy and sale by execution or garnishment. *Matter of Braen*, 72 Bankr. 56, 60 (Bankr. D. N.J. 1987); *First Southern Properties, Inc. v. Vallone*, 533 S.W.2d 339, 343 (Tex. 1976); *Daniels v. Pecan Valley Ranch, Inc*., 831 S.W.2d 372, 382 (Tex. App.-- San Antonio 1992, writ denied).

> In *Braen*, the court went on to hold that, since the property at issue was in *custodia legis* and not subject to execution, the trustee's status as a hypothetical lien creditor would not defeat the creditor's interest. 72 B.R. at 60. However, when the court enters a decree of distribution, the property is subject to levy, as to the distributee, under Texas law because the purpose of the in *custodia legis* doctrine is satisfied. *Gonzales v. Daniel*, 854 S.W.2d 253, 256 (Tex. App.-- Corpus Christi 1993, no writ).

> * * *

> A simple contract creditor has only the rights arising from breach of a simple contract i.e., a damage claim. There would be insufficient basis for a court to conclude that a simple contract creditor could assert a direct interest relating to the interpled registry funds.

*Ebert v. Blackmax Downhole Tools (In re Gibraltar Resources)*, 197 B.R. 246, 252 (Bankr. N.D. Tex. 1996).

32.     Here, we have a case where the funds were deposited into the court registry under court order and then (by summary judgment) distributed to Chris Bandas and others.   That

distribution was pursuant to the summary judgment is not assailable as a preference.  Likewise, as to Bandas and his co-counsel it is not a fraudulent transfer because the state court found that it was a transfer of their own property – the proceeds of their portion of the lawsuit previously assigned – not a "payment" of a debt.

**Attachment Cases Distinguishable**

33.    There are cases holding that funds attached by a creditor and in the registry of the clerk are "property of the estate" if, on the date of the bankruptcy, the funds have not yet been turned over to the creditor.  These cases deal with funds previously *attached* by creditors and held by a court under writ of attachment.  Relying on 11 U.S.C. §542(a) and 543, they reach a decision because there is no dispute that the funds are the debtor's subject to the creditors' unperfected and inchoate lien.  In other words, the debtor has title and the creditor's rights are subject to avoidance.  Those cases do not involve the voluntary interpleader of funds where title is in dispute.  They are not to be confused with this case.

***Equator* is not this Case**

34.    The Debtor cites only a single case for the proposition that "It is beyond argument that the funds in the state court registry are property of the estate."  *In re Equator Corp.*, 362 B.R. 326 (Bankr. S.D. Tex. 2007).  *Equator* did not deal with an interpleader into a court registry.  In *Equator,* Judge Steen dealt with an attorney who held funds in an IOLTA account and permitted foreclosure of an attorneys lien post-petition in violation (the court found) of the Rules of Professional Conduct and Section 549.  The Debtor signed a confession of judgment post-bankruptcy as "John Doe" to permit the attorney to receive money from Peter Riga's IOLTA account.  That case is not this case.

10

35.     Here, the money is not in an IOLTA account and nobody has signed a confession of judgment.  The money is in the registry of a court who has already issued summary judgments and wherein the Debtor has taken little or no action.  In this case, the Debtor is seeking to compel parties to file a motion to disburse money from the State Court's registry.  Unlike *Equator*, the rights of the attorneys to the fee were protected by a filing under Section 12.014 of the property code and summary judgment was entered pre-petition.  *Equator* is not like this case.  No distribution to Bandas will happen unless there is Bankruptcy Court authorization.

**Courts Frown on Using Bankruptcy for a "Second Bite at the Apple"**

36.     Indeed, in the few cases identical to this one wherein a debtor who is losing an interpleader seeks a second bite at the apple in bankruptcy court, the bankruptcy court is disinclined to permit the second shot.  See, *In re Thomas*, 2007 Bankr. LEXIS 2006 (Bankr. S.D.N.Y. 2007) (on the filing date, debtor held no interest in registry funds, debtor sanctioned and case dismissed).  Here, the State Court has already granted partial summary judgment in Bandas' favor and was about to rule on a fatal "no evidence" summary judgment.  The Debtor has taken no discovery and has no expert.  The Debtor has effectively lost and has no right to the interplead funds, but hopes to buy a second chance by re-filing the same suit.

**BANDAS' OWNS THE FUNDS IN THE REGISTRY**

37.     The Motion attacks Bandas' ownership of the funds in the State Court's registry. That attack demonstrates how the Motion is not the proper device to resolve a title dispute. Obviously, this Court is not expected to resolve an ownership dispute in the context of allowing cash collateral usage under 11 U.S.C. §363 and Fed. R. Bankr. P. 4001.

38.     The Debtor contests Bandas' rights to the property on hand on two bases 1) there is no fee owed on non-cash recovery, and 2) the expenses are "unsecured".  For purposes of the

Motion, the issue of Bandas' entitlement to reimbursement of expenses is sufficient to establish his ownership.  The issue of the "unearned" fee can be addressed in the State Court.  As for expenses, however, the Debtor concedes that expenses have not been repaid from the judgment.[12]

39.     This fee agreement, as quoted above, is an absolute conveyance of the client's interest in the case to cover fees and also expenses.

40.     Judge Steen's *Equator* opinion held that attorneys can have no ownership in the cause of action and for that proposition cited the Fifth Circuit *Marre v. United States*, 117 F.3d 297, 307-308 (5th Cir. 1997).  While the Fifth Circuit stated an attorney does not own a part of the case while the action is being litigated, the Fifth Circuit has explained that, once the contingency of a favorable judgment occurs, the fee becomes an absolute right:

> Under Texas law, a contingency fee agreement is generally considered to be an executory contract. See *Lee v. Cherry*, 812 S.W.2d 361, 363 (Tex.App.-- Hous.[14th Dist.] 1991, reh'g of writ overruled); *Brenan v. LaMotte*, 441 S.W.2d 626, 630 (Tex.Civ.App.San Antonio 1969, no writ); *White v. Brookline Trust Co*., 371 S.W.2d 597, 600 (Tex.Civ.App.Amarillo 1963, writ ref'd n.r.e.); *Carroll*, 140 Tex. 424, 168 S.W.2d 238, 240.  Therefore, as a general rule, "an attorney does not receive a legal or equitable interest pursuant to a contingency fee contract until the contingency actually occurs." *In re Willis*, 143 B.R. 428, 431.  **Once the contingency occurs**, the attorney has a lien on the judgment or settlement securing his services, and "**an attorney's lien is paramount to the rights of the parties in the suit, and is superior to other liens on the money or property involved, subsequent in point of time.**" *Id*. at 432 (citations omitted).

*Marre v. United States*, 117 F.3d 297, 307-308 (5th Cir. 1997) (emphasis added).

41.     Thus, pre-judgment, the attorney has a lien, but after the successful judgment springs the contingency, the lien effectively becomes a conveyance.  The majority of the fees have already been paid by the summary judgment.  But the expenses have not.  The client conveyed their interests (and created a lien) to the extent needed to pay expenses as well as fees.

---

[12] The Debtor contests the reasonableness of the expenses and whether they are properly accounted for, but the Debtor does not dispute that the expenses have not been satisfied from the judgment.

42.     Bandas, Meyer and Shackelford filed the documents under the Texas Property Code to perfect the transfer of their rights pre-petition.  No third party could acquire title to the litigation superior to that of Bandas and his co-counsel.  *Marre.*  A lien is not necessary if one actually owns the asset.  To the extent the Debtor disputes title, that dispute was pending before the state court, who should continue to adjudicate it.  The Court should abstain from deciding these issues.

### THE DEBTOR DOES NOT MEET THE TEST FOR USE OF CASH COLLATERAL

43.     The Debtor mailed its "expedited" motion on August 24 with 20 day notice language.[13]  The Court is holding a hearing on September 2 – only 10 days later.   The Motion seeks relief under 11 U.S.C. §363(c)(2)(B), which requires "notice and a hearing".  Under Fed. R. Bankr. P. 2002(a)(2), the parties normally have at least 20 days notice of a hearing to use cash collateral unless the use is sought on an emergency interim basis under 11 U.S.C. §363(c)(2)(3) and  Fed. R. Bankr. P. 4001(b)(2), which may authorize an interim use of cash collateral "**only** that amount of cash collateral as is necessary **to avoid immediate and irreparable harm** to the estate pending a final hearing."  (emphasis added).

44.     There is no doubt that the Motion fails to meet the test of Rule 4001(b)(2).  There is no evidence of immediate or irreparable harm and no indication of the amount needed to avoid such harm.  Indeed, what harm could come to the Debtor that it has not already suffered?  The funds have been in the registry of the State Court since January.  Exactly 230 days have passed since the letter of credit was first interplead.  There is no urgency.

45.     Moreover, if this were a final hearing, the Debtor fails to provide adequate protection for the use of cash collateral.  Under 11 U.S.C. §363(e) the Debtor is required to give

---

[13] Bandas notes that BLR 4001(b) does not allow the 20 day notice and instead requires a different <u>15</u> day notice paragraph.  The Debtor's use of the incorrect notice language (found in BLR 9013) is presumably not estoppel, but could be a potential source of confusion for creditors who respond in 20 days relying on the inaccurate notice.

adequate protection for the use of collateral.  Adequate protection is defined in 11 U.S.C. §361. No replacement collateral is identified or offered.  In the absence of replacement lien, the authorization for use of cash collateral should be denied.

## ABSTENTION UNDER SECTION 305 IS SENSIBLE

46.     The Court may abstain from hearing any bankruptcy case if abstention is in the best interests of the creditors and the debtor is better served by dismissal.  11 U.S.C. §305. Specifically, the court takes into account the fact that the Debtor intends to engage in lengthy litigation that will prevent speedy confirmation.  In *In re Duratech Indus., Inc.*, 241 B.R. 283 (E.D.N.Y. 1999), the court outlined the difficulties in trying a complex dispute that served little benefit to the creditors.  In the present case, there is a complex dispute as evidenced by the massive complaint filed against all the defendants.  Judge Hancock, by comparison, is much closer to trial and summary judgment.

## CONCLUSION

47.     The Debtor brought the motion to use cash collateral as an "end run" around the case it was losing before Judge Hancock.  The Motion is procedurally defective and not supported by the facts.  Indeed, the Motion lacks any justification for use of cash collateral. There is no allegation that the cash is actually needed to operate.

48.     The Court should honor the jurisdiction of the state court, in whose registry the disputed funds are kept.  The Court should abstain from hearing this matter or suspend the proceeding because the statutory prerequisites of 11 U.S.C. §305 are met.  Alternatively, the court should dismiss the Chapter 11 case under 11 U.S.C. §1121.

WHEREFORE, PREMISES CONSIDERED, the Debtor requests that the Court deny Docket #20, and grant such other and further relief to which it may show itself justly entitled.

DATED:  September 3, 2009

Respectfully submitted,

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By:____*/s/ Edward L. Rothberg*_____
    EDWARD L. ROTHBERG
    State Bar No. 17313990
    HUGH M. RAY, III
    State Bar No. 24004246
    Eleven Greenway Plaza, Suite 1400
    Houston, Texas 77046
    Telephone: (713) 961-9045
    Facsimile: (713) 961-5341

ATTORNEYS FOR CHRIS BANDAS, THE BANDAS LAW FIRM, JEFF MEYER, AND MOULTON & MEYER

### Certificate of Conference

Pursuant to BLR 9013, I conferred in good faith with Mr. Simon, counsel for the Debtor/Movant who was physically present in my office on September 3, about the Motion and this response.  We were unable to reach an agreement after conferring.

Dated:    September 3, 2009

____*/s/ Hugh M. Ray, III*_____
Hugh M. Ray, III

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been served via DLR 5.1 and the ECF system, to the parties on the ECF service list.

*/s/ Hugh M. Ray, III*
HUGH M. RAY, III
