IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| § | Chapter 11 |
| RIGHT OF WAY MAINTENANCE § | |
| EQUIPMENT COMPANY, § | Case No. 09-35037 |
| § | |
| DEBTOR. § | |
| § | |

# DEBTOR'S BRIEF IN SUPPORT OF
# EXPEDITED MOTION FOR USE OF CASH COLLATERAL

**TO: THE HONORABLE KAREN K. BROWN, UNITED STATES BANKRUPTCY JUDGE:**

RIGHT OF WAY MAINTENANCE EQUIPMENT COMPANY ("Debtor" or "ROWMEC") hereby files this Brief in Support of Expedited Motion for Use of Cash Collateral (the "Motion"), and, in support thereof, would respectfully show unto the Court the following:

**A.    THE FUNDS IN THE REGISTRY OF THE STATE COURT
         ARE PROPERTY OF THE ROWMEC BANKRUPTCY ESTATE**

1.    This Court need only look to two reported decisions to decide the issue of whether the funds in the registry of the State Court are property of the ROWMEC bankruptcy estate.

2.    The first decision was rendered by the Honorable Wesley Steen on February 10, 2007, in *In re Equator Corp*, 362 B.R. 326 (Bankr. S.D. Tex. 2007), *affirmed Norman v Havis*, 261 Fed.Appx. 795, 2008 WL 152564 (5th Cir. 2008).  For convenience, a copy of said decision is attached hereto as **Exhibit "A"**.

3.    In *Equator,* Judge Steen dealt with a nearly identical situation.  As Judge Steen framed the issue:

1

> "The principal dispute between the parties is whether the transferred funds were property of the estate."

*Id.,* at 331. This is the same issue that is before the Court in this case.

4. Judge Steen determined first that both the debtor, Equator, and the attorney, Frankoff, made a claim to the funds in question:

> "There is no material issue of fact with respect to the following. The funds that were transferred to Frankoff and Norman originated from the Merloni Settlement, which was a settlement of a claim owned by Debtor. Prior to the commencement of the bankruptcy case, Frankoff, Debtor, and Vir recognized a dispute over entitlement to the funds and deposited the funds in Riga's trust account pending the resolution of the dispute. **As of the date that the bankruptcy petition was filed, both Debtor and Frankoff made claim to the funds in Riga's trust account."**

*Id.,* at 331-2 (emphasis added).

5. In ¶ 12 of his Objection to the Cash Collateral Motion, Bandas sets forth portions of the Rule 11 Agreement signed by the parties when the money was placed into the State Court Registry. A true and correct copy of the Rule 11 Agreement is attached hereto and incorporated herein by reference for all purposes as **Exhibit "B"**. Unfortunately, paragraph 5 of the Rule 11 Agreement merely proves the point Judge Steen made in *Equator,* that ROWMEC is making a claim to the funds in question:

> "5. Right of Way Maintenance Equipment, Inc. disputes the extent and amount of the lien and property interest in the proceeds from the Original LOC by the Bandas Law Firm, P.C., Moulton & Meyer, L.L.P., and Shackelford Law Firm."[1]

6. Judge Steen then framed the argument of the attorney in the *Equator* case making it clear that the contention raised by said attorney is the same contention Bandas makes in this case:

> "The Defendants assert that the funds were not property of the estate because they assert that the $262,500 belonged to Frankoff in full ownership. The document that they cite for ownership of the funds refers to both a lien and to an assignment."

*Equator,* at 332. The same holds true in this case. The Bandas Fee Agreement undisputedly refers

---

[1] Interestingly, the parties chose the language "lien and property interest" when defining the interests of Bandas, Meyer and Shackelford in this Rule 11 Agreement, particularly in light of the fact that Bandas used lien language as well as assignment language in the Bandas Fee agreement..

to both a lien and to an assignment (*See* **Exhibit "6"** attached to ROWMEC's exhibit list filed on September 2, 2009, in this case). The Bandas Fee Agreement contains the following assignment language:

> "Each of the undersigned client(g), in consideration for the attomeys' services, hereby sells, conveys, grants and assigns to the attorneys an interest to the extent herein indicated (i.e.., attorneys' fees, expense costs, disbursements, etc.) in each client(s)' claims, causes of action, settlement, judgment, monies, interest, or property recovered or recovery of whatever nature, type, or means."

However, the Bandas Fee Agreement also contains the following "lien language":

> "THE CLIENT(S) HEREBY GRANT(S) THE ATTORNEYS A LIEN ON THE CLAIMS AND CAUSES OF ACTION COVERED BY AND REFERENCED IN THIS AGREEMENT, and a lien on any proceeds and all Judgments recovered in connection with this claim(s) or cause(s) of action as security for the payment of the attorneys fees, expenses, disbursements, or costs referenced herein."

7. After an exhaustive review of the relevant case law, Judge Steen arrived and the following conclusion:

> "Regardless of what Defendants claim, the contingent fee agreement could grant no more than a lien to secure fees and expenses. If it were to grant more, it would be illegal and illegal contracts are void."

*Id.,* at 333.

8. The second decision was rendered by the Honorable Marvin Isgur on August 3, 2009, in *In re Amaravathi Limited Partnership*, 2009 WL 2432315 (Bankr.S.D.Tex.). For convenience, a true and correct copy of said decision is attached hereto as **Exhibit "C"**. In the *Amaravathi* case, a secured creditor, C1 Trust, claimed that it held an absolute assignment of rents, and, therefore, the rents generated by the apartment project in bankruptcy before Judge Isgur did not constitute property of the *Amaravathi* bankruptcy estate. This is practically the identical arguments raised by Bandas in his Objection to Motion to Use Cash Collateral, that the money in the registry of the State Court is not property of the ROWMEC bankruptcy estate due to the absolute assignment language in the Bandas Fee.

9. Judge Isgur's holding was clear and unambiguous:

> "The Court now holds:
> • Under § 541(a)(6), the post-petition rents are property of the estate;
> • **Regardless of whether the assignment was "absolute" or "collateral," the post-petition rents are also property of the estate under Texas Law and §541(a)(1);**
> • C1 Trust's collateral interest in rents includes post-petition rents under § 552(b); and
> • **The post-petition rents are "cash collateral" that can be used by the Debtors pursuant to § 363."**

*Id.* 2009 WL 2432315 at 2 (Emphasis Added).

10.     In explaining why the debtor retains sufficient interests in rents under an absolute assignment to justify their characterization as "property of the estate", Judge Isgur reasoned as follows:

> "The most obvious interest that a debtor retains following an "absolute" assignment is the debtor's ability to insist that the rents be properly applied to the debtor's obligation to the lender. As one commentator has explained, "the rents that the lender collects must be applied to the indebtedness or for expenses related to the mortgaged property. The lender cannot use rents to give its stockholders a dividend, to give its employees a raise, or to redecorate its offices." Forrester, 59 FLA. L. REV. at 513-514; *See also Travelers Indem. Co. v. Grant Assocs. (In re Grant Assocs.),* No. M-47 (RJW), 1991 WL 21228, at *4 (S.D.N.Y. Feb.5, 1991) ("[A]ll of the cases seem to recognize that the debtor retains *some* sort of interest in the rents, perhaps best characterized as the right to an accounting. In other words, the assignee must use the excess rent income to pay down the debt, and thus its right to the rent is not without conditions.") (emphasis in original)."

*Id.* 2009 WL 2432315 at 16.  The same holds true here.  Bandas must apply the funds, if at all, to obligations he claims ROWMEC owes to him under the Bandas Fee Agreement.  ROWMEC has in fact demanded an accounting in the Adversary Proceeding.  Bandas cannot go to Las Vegas and gamble away the funds without first giving ROWMEC credit.

B.  **BANDAS' CLAIM FOR A CONTINGENCY ON PRODUCT RETAINED BY ROWMEC IS, AS A MATTER OF LAW, UNENFORCEABLE UNDER TEXAS LAW[2]**

11. Bandas claims that he is entitled to $323,000.00 in the Registry of the State Court to satisfy his 45% contingent fee on the $718,000 in product he alleges that ROWMEC was able to retain as a result of the Gyro-Trac Litigation. However, Bandas, who drafted the Bandas Fee Agreement, did not provide for recovery of a contingent fee on non-cash recoveries. As a matter of Texas law, Bandas is not entitled to such a recovery. *Levine v. Bayne Snell & Krause, Ltd.*, 40 S.W.3d 92 (Tex. 2001). The Texas Supreme Court held in *Levine* reasoned,

> "Because the lawyer is better able than the client to predict and provide for fee arrangements based on recoveries diverging from the traditional payment actually received, the burden should fall on the lawyer to express in a contract with the client whether the contingent fee will be calculated on non-cash benefits as well as money damages."

*Id.* at 95. Then the Supreme Court held:

> "Because in this case the contingent fee contract did not provide otherwise, "any amount received" refers only to the net amount of the client's recovery. We, therefore, conclude that no further fee is due from the Levines to their attorneys. Accordingly, we reverse the judgment of the court of appeals and render judgment for the Levines."

*Id.*, 40 S.W.3rd at 96. In the Bandas Fee Agreement, the "Recovery" upon which the contingent fee is calculated is described as "the total/gross amount of monies, interest, or property recovered." There is no reference to the fact that the contingent fee will be calculated on non-cash benefits as well as money damages.

C.  **BANDAS' CLAIM FOR EXPENSES IS CLEARLY UNSECURED**

12. Bandas claims that he is entitled to recover out of the State Court Registry expenses he and his co-counsel, Moulton & Meyers have incurred in the prosecution of the

---

[2] The argument and authorities in this section and the next two sections are intentionally extracted from ROWMEC's Cash Collateral Motion so that, for the convenience of the Court, all legal arguments are set forth in one document.

5

Gyro-Trac Lawsuit. He claims that he is entitled to $218,543.64, plus interest in the amount of 34,641.87 for a total of $253,185.51. This amount is disputed by ROWMEC and is the subject of a request for an accounting in the Adversary Proceeding. ROWMEC has also asserted causes of action in the Adversary Proceeding seeking to set aside the Bandas Fee Agreement, as supplemented.

13. However, assuming that the Court determines that some amount of expenses is due under the Bandas Fee Agreement, such amount would be an unsecured claim against the ROWMEC bankruptcy estate. While Bandas is granted a lien to secure such expenses under the Bandas Fee Agreement, no UCC-1 Financing Statement was ever filed, and, therefore, such claim would be unsecured. Under Section 9 of the Texas Business and Commerce Code, a right to payment under a contingency fee agreement is a contract right and falls under the broad category of "general intangible." TEX. Bus. & COM. CODE ANN. § 9.102(a)(42); *See In re Newman*, 993 F.2d 90, 93 (5th Cir. 1993). Perfection of a security interest in a general intangible is accomplished by filing a financing statement. *See* § 9.310; *See also Centex Constr. Co.* v. *Kennedy,* 332 F.Supp. 1213, 1215 (S.D. Tex. 1971) (finding that a security interest in contract rights is properly perfected by the filing of a financing statement). Bandas has not filed a financing statement. In *In re Blast Energy Services, Inc.,* 396 B.R. 676 (Bkrtcy, S.D. Tex. 2008), Judge Bohm arrived at the same conclusion.

> "Responding to Eagle's position that the Article 9 definition of accounts receivable should govern, EDDO argues that the Assignment does not fall within Article 9 because it was not secured by any security, guaranty, or lien. EDDO contends that the relevant term is not "accounts receivable" (classified as an "account" under the UCC), but rather "general intangible," defined as a "bundle of rights such as those inherent in a franchise, [or] a chose in action." *See In re Newman***,** 993 F.2d 90, 93 (5th Cir.1993). EDDO also notes that the common law interpretation of Article 9 treats a cause of action as a "general intangible" and not an "account." *See In re Slippery Rock Forging, Inc*., 99 B.R. 679, 681 (Bankr.W.D.Pa.1989). **Thus, since the rights Eagle seeks to reserve pursuant to the Assignment (i.e. the claim against Hallwood) constitute a cause of action, they are properly classified as a general intangible, and not an account receivable under Texas law. This Court agrees.**

6

*Id.,* at 705-6 (emphasis added).

### D.  BANDAS' REMAINING ARGUMENTS

14.  This is not a second bite at the apple as Bandas has suggested. There has never been a bite at the apple. The Court has made no determinations as to the funds remaining in the State Court Registry. *See* State Court Docket Sheets, **Exhibit "11"**, attached to ROWMEC's exhibit list filed on December 2, 2009.

15.  The Attachment Cases are directly on point. In this case, the funds in the State Court Registry have not been turned over to Bandas, and Bandas' rights are subject to avoidance. The very Rule 11 Agreement cited by Bandas in support of his position establishes clearly that ROWMEC disputes Bandas' claim. Everyone knew that before the money was ever placed in the State Court Registry.

16.  *Casco Chem Co.* is distinguishable. In that case the parties reached an agreement on the disbursement of the funds on the day before the debtor's involuntary bankruptcy. In this case no agreement has been reached by ROWMEC as to the disposition of the funds, nor has there been a determination by the State Court of the parties rights to the funds in the State Court Registry. The remaining cases cited are simply not the law in this district.

17.  Section 12.014 of the Texas Property Code does not deal with assignments of causes of action in attorney/client contingent fee agreements. As stated by Judge Steen in *Equator,*

> "By authority of the rules of professional responsibility applicable to Texas attorneys, Frankoff's interest could be no more than a security interest.
>
> (h) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:
> (1) acquire a lien granted by law to secure the lawyer's fee or expenses; and
> (2) contract in a civil case with a client for a contingent fee that is permissible under Rule 1.04.
>
> State Bar Rules, V.T.C.A., Government Code Title 2, Subtitle G App. A, Art. 10, § 9, Rules of Prof. Conduct, Rule 1.08(h), adopted by order of Oct. 17, 1989."

*Equator,* 362 B.R. at 333.

      18.    The Judge Steen cited the Texas Supreme Court for the following proposition of law:

> "In Texas, as in most states, a lawyer may not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, other than a lien to secure payment of his fee and expenses, and a contingent fee allowed by law."

*Mallios v. Baker,* 11 S.W.3d 157, 169 (Tex.2000) (Hecht, J., concurring).

### E.   CONCLUSION

      19.    Both Judge Isgur and Judge Steen have arrived at the same conclusions regarding absolute assignments and their role in a bankruptcy proceeding where the issues are "property of the estate" and "cash collateral" usage. The analysis in their cases rests on whether a debtor retains rights in the collateral allegedly assigned notwithstanding the fiction called "absolute assignment". Judge Steen's case is directly on point. He ruled that there can never be anything more than a security interest created by a contingent fee agreement regardless of the language. Judge Isgur ruled that regardless of whether the language creates an absolute assignment, 11 U.S.C. § 541 trumps state law in determining whether the collateral constitutes property of the estate.

      20.    Notwithstanding the arguments of Bandas, ROWMEC believes that under the Supremacy Clause, this Court gets to make the call on the disposition of the funds in the State Court Registry. The funds are the subject of dispute, to an extent, and as to the remainder, not. ROWMEC respectfully requests that the Court direct ROWMEC, Bandas and Cambridge to file a joint motion for an order in the State Court Litigation within three business days of the entry of the order of this Court permitting withdrawal of the funds in the State Court Registry.

      21.    ROWMEC respectfully requests that the $390,112.56 due under the Cambridge Agreement be deposited into the registry of this Court. If the Court ultimately determines that the lien of Cambridge/Bandas is valid, binding and enforceable, such lien is more than protected

by such funds.

22.     ROWMEC requests that the balance of the funds removed from the State Court Registry be turned over to ROWMEC for its use in the ordinary course of its business.

23.     ROWMEC requests that it be given the right to use and sell its inventory and equipment in the ordinary course of its business in that the Cambridge lien is adequately protected by the $390,112.56 deposited into the registry of this Court and adequately protected by the remaining balance due under the Gyro-Trac Final Judgment.

24.     ROWMEC requests such other and further relief as is just.

Respectfully submitted this 4th day of September 2009.

/s/ Leonard H. Simon
Leonard H. Simon, Esq.
TBN: 18387400; SDOT: 8200
The Riviana Building
2777 Allen Parkway, Suite 800
Houston, Texas 77019
(713) 737-8207 (Direct)
(832) 202-2810 (Direct Fax)
lsimon@pendergraftsimon.com
COUNSEL FOR DEBTOR

OF COUNSEL:
PENDERGRAFT & SIMON
The Riviana Building
2777 Allen Parkway, Suite 800
Houston, Texas 77019
(713) 528-8555 (Main)
(713) 868-1267 (Main Fax)

CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been served by electronic transmission to all registered ECF users appearing in the case on this 4th day of August 2009.

/s/ Leonard H. Simon
Leonard H. Simon